IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL C. RANSOM ) | |
| ) | |
| v. ) | No. 3:14-1915 |
| ) | Judge Sharp/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable Kevin Sharp, Chief Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 15). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed his applications for benefits in November 2010, alleging disability onset as of April 1, 2010. (Tr. 136) His applications were denied at the initial and

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on March 26, 2013, when plaintiff appeared with counsel and gave testimony. (Tr. 37-63) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until April 26, 2013, when she issued a written decision finding plaintiff not disabled. (Tr. 19-30) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 201.

2. The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic left leg pain, depressive disorder, borderline intellectual functioning, and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can only frequently perform all postural activities. He can perform one, two, and three step tasks. He can maintain concentration, persistence, and pace for two hours to perform such tasks, with normal breaks spread throughout the day. He can interact appropriately with others, and adapt to only occasional changes within the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 7, 1956 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-22, 24, 28-30)

On August 4, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the medical evidence in this case is taken from

3

plaintiff's brief, Docket Entry No. 12-1 at pp. 2-5:

Plaintiff is currently age fifty-eight and was age fifty-three on his alleged onset date. Mr. Ransom has a high school education. Plaintiff has past relevant work experience as a (1) heavy truck driver; (2) commercial cleaner; (3) industrial truck operator; (4) warehouse worker; (5) construction worker; (6) cleaner, housekeeping; (7) dishwasher; and (8) press operator helper. (R. 51).

Plaintiff alleges disability due to a combination of severe physical and mental impairments including the following: (1) osteoarthritis left lower extremity status post multiple gunshot wounds, status post open reduction internal fixation left tibia; (2) depressive disorder; and (3) borderline intellectual functioning.

The medical evidence of record begins on September 24, 2010, where Plaintiff presented to Nashville General Hospital Internal Medicine Clinic. (R. 224). Plaintiff reported having left leg pain for about fourteen years secondary to gunshot wounds. He further indicated decreased strength and increased pain in his left leg and hip over the preceding few months. (Id.). Examining doctor Chimalum R. Okafor, M.D. started Plaintiff on Ibuprofen 600 mg twice daily and Flexeril 10 mg twice daily. (R. 226). On October 29, 2010, Plaintiff returned with continued reports of pain in the left lower extremity. He reported balance issues and had multiple falls, including six in the last three months and thirteen in the last year. (R. 226, 233). Examination was positive for 4/5 reduced strength in the left lower extremity. (R. 232). Radiographs of the left tibia and fibula revealed the internal hardware and multiple small overlying metallic fragments. (R. 235). Plaintiff presented for orthopaedic consultation with Thomas Limbird, M.D. on November 11, 2010. Dr. Limbird's initial assessment was that Plaintiff's discomfort was due to vascular insufficiency and recommended a trial of compression hose. (R. 236).

Plaintiff presented for a limited physical consultative examination performed January 17, 2011 by Bruce A. Davis, M.D. Examination showed left leg healed burn injury and skin graft scars. Plaintiff demonstrated slow gait maneuvers (heel, toe and tandem). (R. 241).

On January 24, 2011, state-agency physician James P. Gregory, M.D. reviewed the limited record available at the time. (R. 239-51). Dr. Gregory provided an assessment that Plaintiff could perform a full range of work at the medium level of exertion. (Id.).

Plaintiff returned to Nashville General Hospital on January 28, 2011 for follow-up. He noted pain at 8/10 on a scale of ten in the left leg, characterized as constant, changing between throbbing and sharp. Plaintiff stated that Naproxen and cyclobenzaprine prescribed at his last visit did not provide relief. In addition, Plaintiff reported memory difficulties for

past seven to eight months with depression for two to three years. He requested psychiatric help. (R. 276). Plaintiff returned again on march 11, 2011 reporting an unchanged level of pain in his left lower extremity. (R. 268). Again, March 25, 2011, Plaintiff reported pain in the left leg at 8/10 on a scale of ten. (R. 261). On May 5, 2011, Plaintiff reported a 9/10 pain level. (R. 289).

The evidence of record contains a consultative psychological examination performed by Dorothy Lambert, Ph.D. on June 28, 2011. (R. 291). Dr. Lambert noted that Plaintiff's concentration appeared very poor, intellectual functioning may be within the borderline range, and abstracting ability was not impaired. Dr. Lambert observed that Plaintiff did not appear to be malingering. Plaintiff candidly recounted his history with alcohol and drugs. In the Medical Source Opinion, Dr. Lambert opined that Plaintiff appeared "markedly impaired in concentration and persistence" and markedly impaired in the "ability to react to changes." Dr. Lambert diagnosed depressive disorder not otherwise specified; cannabis dependence; cocaine dependence in partial remission; rule out cognitive disorder not otherwise specified; and rule out borderline intellectual functioning. (R. 296).

Plaintiff attended a second psychological evaluation ordered by the Commissioner on August 31, 2011, administered by Bobbie L. Hand, M.S. (R. 314). On memory testing, Plaintiff's memory scores were in the deficient range in auditory memory; visual memory; immediate memory; and delayed memory. IQ testing yielded results in the borderline intellectual functioning range. (R. 316-17).

Subsequent records from Nashville General Hospital reflect Plaintiff's ongoing difficulty with his left lower extremity arthritis and pain. In addition, Plaintiff reported multiple times difficulty walking or getting up from a bed or chair.

Paul Talley, M.D., Plaintiff's treating physician, provided a statement dated April 15, 2012 supporting Mr. Ransom's claim. Dr. Talley stated that Plaintiff "has tried to contend with his medical problems and work; however he has been unable to do so." Dr. Talley opined that Plaintiff is not able to work and he is totally disabled at this time." (R. 338).

Reference to additional record evidence is made in the discussion below, as necessary to address the parties' legal arguments.

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima*

*facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred in failing to properly consider evidence which supports the credibility of plaintiff's subjective pain complaints. Plaintiff contends that the ALJ ran afoul of the provisions of Social Security Ruling 96-7p when she failed to acknowledge both plaintiff's consistent complaints of left leg pain and the radiographic evidence supporting such complaints. Plaintiff further cites his regular report of falling and experiencing difficulty getting up from a bed or chair due to his left leg limitations, and the few reports by his medical providers that he was using a cane. However, the ALJ's decision contains ample references to plaintiff's reports of left leg pain and limitations; the mild radiographic evidence of record and generally unremarkable physical examinations; and, the fact that plaintiff's use of a cane was not prescribed by any physician and was only sporadically reported by him as being necessary. (Tr. 25-26) The ALJ also made note of plaintiff's own testimony that he could stand for 20 to 30 minutes before needing to sit, could

walk for three to five hours at one time, and could sit through a church service. (Tr. 24) Finally, she observed that "[a]lthough he may not have worked on a full-time basis, he reported mowing lawns and working as a handyman for money ... [and] work[ed] as a tow motor operator at least through October 2010, even if it was sporadic." (Tr. 28) The undersigned finds that substantial medical and testimonial evidence supports the ALJ's decision to discount the credibility of plaintiff's subjective complaints of disabling left leg pain.

Plaintiff's next argument is that the ALJ erred in weighing the opinion evidence offered by the two consultative psychological examiners, Dr. Lambert and Ms. Hand. Dr. Lambert rendered an assessment on June 28, 2011, which included the opinions that plaintiff "appear[ed] markedly impaired" in concentration and persistence, and in the ability to react to changes. (Tr. 291) On August 31, 2011, Ms. Hand opined that plaintiff demonstrated no significant limitation in any area of mental functioning, other than significant problems with his short-term memory. (Tr. 314) The ALJ gave "great weight" to Ms. Hand's opinion, but only "some weight" to Dr. Lambert's opinion, offering the following rationale:

> Some weight is given to the opinion of Dr. Lambert, discussed above, to the extent it supports the above residual functional capacity. However, the undersigned does not accept the marked limitations assessed by Dr. Lambert, as the claimant severely downplayed his substance abuse problems to her, particularly his daily use of marijuana. Further, those marked limitations are not consistent with the GAF of 55 she assessed the claimant with.

(Tr. 28) Plaintiff contends that he gave the same report concerning his substance abuse to both consulting sources, and that in any event, the ALJ's rationale demonstrates that she

9

improperly applied the SSA's standard for evaluating drug and alcohol abuse by "segregating out" the effects of such abuse before making the disability determination, when the standard requires that a finding of disabled first be made upon consideration of all impairments including drug and alcohol abuse, before moving on to a determination of what degree of limitation would remain if the effects of drug abuse were removed from consideration. See 20 C.F.R. § 404.1535.

Although the ALJ's rationale for rejecting Dr. Lambert's assessment of marked limitations is questionable at best, relying on a perceived *under*statement of plaintiff's drug abuse and the snapshot of plaintiff's *global* functional level represented by a numerical score, these defects do not undermine the decision to give great weight to Ms. Hand's opinion. The ALJ sufficiently articulated her rationale for accepting the opinions of Ms. Hand and the nonexamining psychological consultant who reviewed her report. In particular, the ALJ made note of the following observations of Ms. Hand:

> Mr. Ransom was friendly and pleasant. He worked steadily and was not easily fatigued during his lengthy evaluation, which took about three and a half hours. He was offered several breaks but only accepted one brief restroom break about three fourths of the way through the evaluation. Mr. Ransom requested that some directions be repeated for clarification but did not seem to struggle to understand. His concentration appeared to be sufficient. He recalled dates and details of events. Most of Mr. Ransom's test results are considered valid, but some of his memory scores may provide a slight underestimate of his actual ability. Mr. Ransom appeared more interested and seemed to exert greater effort on performance type tests on the [Wechsler Memory Scale - Fourth Edition] than he did when working on the verbal type tasks.

(Tr. 27, 311) Nonetheless, Ms. Hand observed that plaintiff's short-term memory appeared to be significantly limited, and the ALJ accepted such limitation as requiring that plaintiff

not be forced to perform more than three-step tasks in the workplace. (Tr. 24) The ALJ questioned the vocational expert about the existence of jobs which would accommodate this restriction, as well as the restriction that such tasks not be subject to being changed more than occasionally, and elicited testimony that such jobs would be available. (Tr. 60) The ALJ then further inquired as to whether such jobs would still be available if "instead of one through three step tasks, we limited them specifically to simple, routine, repetitive tasks," and the expert confirmed that a person so limited would still be able to perform the jobs identified. (Tr. 60-61) While the ALJ erroneously stated that Ms. Hand, who is a Senior Psychological Examiner, is also an "acceptable medical source" under the regulations, Ms. Hand's report is cosigned by Dr. Kathryn B. Sherrod, Ph.D., a licensed psychologist who is an acceptable medical source. See 20 C.F.R. § 404.1513(a)(2). This report is therefore on equal footing with that of Dr. Lambert, in terms of the regulatory hierarchy of sources of opinion evidence. See 20 C.F.R. § 404.1527(c). The undersigned finds no reversible error in the ALJ's weighing of this opinion evidence.

Finally, the undersigned finds no grounds for deeming the SSA's drug and alcohol abuse standard to have been misapplied, based on the single statement that marked psychological limitations are not warranted because plaintiff downplayed his substance abuse problems to Dr. Lambert. A similar scenario was presented in Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365 (6th Cir. 2013), as recounted below:

> The ALJ did not conclude that alcohol abuse was material to Gayheart's disability. Rather, he never found Gayheart to be disabled at all, thus precluding the need to assess the materiality of alcohol abuse. But alcohol abuse was a factor in the ALJ's decisionmaking process, particularly in his weighing of Dr. Onady's opinions.

> The ALJ first discussed Gayheart's alcohol abuse in his findings of severe mental impairments. He concluded that "it is evident from treatment notes that the claimant's excessive consumption of alcohol has coincided with his emotional problems and very likely has been an aggravating factor." Alcohol abuse is then listed as one of Gayheart's severe mental impairments.
>
> The ALJ next discussed alcohol abuse in the context of explaining the "little weight" that he gave to the opinions of Dr. Onady, who he found had "minimized the impact of the claimant's alcohol abuse." He cited Dr. Buban's observation that Gayheart's alcohol abuse and "emotional problems" were closely intertwined. Even considering the effects of Gayheart's alcohol abuse and other severe mental impairments together, the ALJ concluded that Gayheart "appears capable of carrying out at least low stress work with limited interactions and concentration as described in the statement of his RFC." This assessment conforms to 20 C.F.R. § 404.1535 because the ALJ made clear that he found Gayheart not disabled without first attempting to separate limitations solely attributable to alcohol abuse.

Id. at 380. Here, as in Gayheart, the ALJ found "polysubstance abuse" to be among plaintiff's severe impairments; considered and relied upon medical opinion evidence which took account of the effects of such abuse; and found plaintiff "not disabled," without giving any indication that this finding was based on a "net effects" determination of what plaintiff's degree of limitation might be if he were to stop his substance abuse. Thus, the ALJ did not misapply the standard of 20 C.F.R. § 404.1535.

In sum, the undersigned finds that the decision of the ALJ is supported by substantial evidence on the record as a whole, and should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 14th day of March, 2016.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE